UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| FELIX IBARRA-VILLALVA | ) | |
| | ) | |
|     Petitioner | ) | Civil Action No. 7:08-91-KKC |
| | ) | |
| V. | ) | |
| | ) | |
| HARLEY LAPPIN, ET AL. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
|     Respondents | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*

Petitioner Felix Ibarra-Villalva ("Ibarra-Villalva"), who is presently confined at the United States Penitentiary - Big Sandy in Inez, Kentucky ("USP - Big Sandy"), has filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 [R. 2]. The Court has granted his motion to proceed *in forma pauperis* by separate Order.

This matter is before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002). As Ibarra-Villalva is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But if the Court determines that the petition fails to establish adequate grounds for relief, it

may dismiss the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

I.      **BACKGROUND**

In his petition, Ibarra-Villalva alleges that on an unspecified date prison officials filed a disciplinary charge against him, but that several particulars in the Disciplinary Hearing Officer's report ("DHO Report") were either incorrect or falsified. Ibarra-Villalva alleges that the DHO Report incorrectly states that he was at FCI-Coleman Low during the incident, when in fact he was at FCI-Coleman I. In addition, he alleges that he never admitted to the charges as stated in the DHO Report. Petitioner states that written statements made by some of the reporting officers were not presented during the Unit Disciplinary Committee ("UDC") review but were later added to the packet presented to the DHO. Finally, Ibarra-Villalva alleges that the DHO improperly refused to delay the hearing so that his staff representative could be present, although the staff representative arrived shortly after the commencement of the proceedings. Ibarra-Villalva alleges that as a result of the disciplinary charge he lost Good Conduct Time ("GCT").

Ibarra-Villalva alleges that he commenced the process of exhausting his administrative remedies by filing a Form BP-8½ on November 24, 2006 to request an informal resolution. Ibarra-Villalva indicates he was told that his claims should not be pursued through a request for informal resolution, but by

filing a Form BP-230 with the Mid-Atlantic Regional Office ("MARO"). Ibarra-Villalva indicates he then filed a Form BP-229 grievance with the warden on December 2, 2006, which was assigned administrative remedy ID# 436150. After this grievance was denied, Ibarra-Villalva indicates he filed an appeal to MARO, but that MARO changed the administrative remedy number to #437368 and then considered it together with another of his grievances, administrative remedy #436152. After MARO denied the appeal, Ibarra-Villalva appealed to the Central Office, which again denied relief. Ibarra-Villalva complains that his exhaustion efforts were frustrated by BOP officials who told him he needed to challenge the DHO decision by filing a Form BP-230 with MARO. Ibarra-Villalva did not file any grievance documents into the record.

In his petition, Ibarra-Villalva states that he filed another lawsuit regarding the same facts. In *Ibarra-Villalva v. USP Coleman Government Officials*, 07-CV-73, Middle District of Florida, Ibarra-Villalva filed a *Bivens* action against certain officials arising out of the same facts, which was dismissed by the district court under the "three-strikes" rule of 28 U.S.C. § 1915(g). Helpfully, in that case he submitted copies of the prison grievances he filed. Those documents, of which the Court takes judicial notice, indicate that on October 5, 2006 the UDC tendered disciplinary charges against Ibarra-Villalva. A DHO hearing on these charges took place on October 31, 2006. At

that hearing, Ibarra was charged, and apparently convicted, of assaulting another inmate by hitting him in the head with a large piece of concrete.

On November 29, 2006, Ibarra-Villalva filed a Form BP-8½ requesting informal resolution of his claim that the hearing should have been postponed to allow him to talk with his staff representative. He indicates that the hearing commenced at 1:30, and his representative did not arrive until 2:00. Ibarra-Villalva also alleged that the DHO's refusal to delay the proceeding demonstrated that he was not impartial. In response, his Unit Team advised him that he should have filed a Form BP-230 directly with MARO to challenge the DHO's findings and sanction.

Instead, on December 2, 2006, Ibarra filed a Form BP-229 with the warden. In that grievance, Ibarra-Villalva asserted that his grievance was not limited to a challenge to the DHO decision itself, but in addition to the "abuse of authority in falsifying such injurious/damaging/stigmatizing report" which resulted in the loss of "privileges and enjoyment of life's freedom." On December 11, 2006, the warden rejected the grievance, again noting that a challenge to the DHO's finding must be initiated by filing a Form BP-230 with the Regional Office.

On December 13, 2006, Ibarra filed a Form BP-230 with MARO, challenging the warden's rejection of his grievance, again asserting that he properly invoked the grievance process because he was challenging not merely

the DHO sanction *per se,* but the conduct of the officials in filing a false report and failing to properly investigate the matter. Apparently because the subject matter of Ibarra-Villalva's appeal to MARO was not clearly related to that previously presented to the warden, and because Ibarra-Villalva did not indicate the administrative remedy number on his appeal to MARO and/or include a copy of the warden's denial, all as required by BOP regulations, MARO assigned Ibarra's grievance a new administrative remedy number, ID #437368, and rejected it for failure to first present the issues in a grievance to the warden.

On January 7, 2007, Ibarra-Villalva filed a Form BP-231 appeal to the Central Office, in which he again indicated that he challenged the BOP's rejection of his prior grievances, but made no mention of the DHO sanction or conduct which formed the substantive basis for his grievance. On January 24, 2007, the Central Office rejected his appeal because he was challenging more than one administrative remedy ID number on a single grievance form. The rejection form directed Ibarra-Villalva that he should correct the deficiences by amending his Form BP-230 to properly reflect that he was appealing from a DHO decision and by amending his Form BOP-229 to properly reflect his complaints against staff members. There is no documentation suggesting Ibarra-Villalva took any further steps to correct these deficiencies.

## II.   DISCUSSION

Before a prisoner may seek the intervention of the courts by seeking habeas relief, he must exhaust available administrative remedies by invoking and exhausting the BOP's inmate grievance process. *Colton v. Ashcroft*, 299 F.Supp.2d 681, 689 (E.D.Ky. 2004); *Wesley v. Lamanna*, 27 Fed.Appx. 438, 2001 WL 1450759 (6th Cir. 2001). To satisfy this requirement, the law requires that administrative remedies be completed in full compliance with all applicable substantive and procedural requirements, such as format requirements and filing deadlines. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Administrative law ... requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.)'").

In this case, Ibarra-Villalva initiated the grievance process by filing a request for informal resolution with unit staff. Ordinarily, this is the correct step for most grievances. 28 C.F.R. § 542.13(a). However, unit staff promptly advised him that because he challenged and raised issues related to a disciplinary hearing and conviction, his grievance should filed directly at the regional level. 28 C.F.R. § 542.14(d)(2) ("DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.")

6

Ibarra-Villalva, however, rejected this advice, instead asserting that his grievance was not limited to a challenge to the DHO decision, but also challenged the conduct of the staff that filed the disciplinary report as an "abuse of authority in falsifying such injurious/damaging/stigmatizing report," as well as the DHO's conduct of the hearing which resulted in the loss of "privileges and enjoyment of life's freedom." In his appeals up to and including the Central Office, Ibarra-Villalva consistently maintained that his grievance was properly initiated at the informal resolution level because his allegations went beyond a challenge to the DHO decision itself.

In this regard, Ibarra-Villalva is simply incorrect. All of the complaints identified in his attempt at informal resolution are directly related to the disciplinary proceedings against him. If these allegations were proven true, they would potentially undermine the validity of the disciplinary hearing against him and the sanctions imposed. Accordingly, they properly belonged as part of a challenge to the DHO decision itself, which was required to be brought in the first instance in a Form BP-230 filed with MARO. 28 C.F.R. § 542.14(d)(2).

Because Ibarra-Villalva filed his grievance at the wrong level, the BOP consistently rejected his filings as improper, and accordingly never addressed the merits of his claims. The Court concludes that the BOP was unquestionably correct in doing so. The allegations made by Ibarra-Villalva,

7

which challenge the validity of the charges pressed against him, the accuracy of the DHO report, the conduct of the DHO hearing and the impartiality of the DHO himself, are precisely the kind of procedural and substantive due process claims used to attack the DHO decision itself. Accordingly, when Ibarra-Villalva did not initiate his grievance at the regional level as required by Section 542.14(d)(2), he failed to properly exhaust his administrative remedies. Because Ibarra-Villalva did not properly invoke the inmate grievance process, he denied the BOP the opportunity to address his claims on the merits. Accordingly, his petition is not yet mature for adjudication and must be denied. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

 Even if the Court were to agree with Ibarra-Villalva's implicit contention that his allegations against the charging officers and the DHO were distinct from a challenge to the DHO decision itself, he still failed to properly exhaust his administrative remedies. As the Central Office indicated in its January 24, 2007 rejection notice, allegations against staff members are properly pursued by filing a Form BP-229 with the warden after an unsuccessful attempt at informal resolution. This was the course taken by Ibarra-Villalva. In contrast, a challenge to a DHO decision must be initiated by filing a Form BP-230 with the regional office. Ibarra-Villalva understood his claims to include a challenge to the DHO decision, even if he intended to bring claims in addition to that against the officers and DHO. He was therefore required to file a separate

8

grievance filed directly with MARO to challenge that decision, something he was repeatedly advised to do but nonetheless refused.

If this matter were before the Court as a civil rights action, the Court might be presented with the question whether Ibarra-Villalva had properly exhausted claims against the charging officers and the DHO when he commenced the grievance process through informal resolution. However, this matter is before the Court on Ibarra-Villalva's petition for a writ of habeas corpus. The only matters cognizable under the Court's habeas jurisdiction are those which will inevitably affect the duration of the petitioner's confinement -- here, the loss of GCT. *Cf. Ramer v. Maxwell*, 2001 WL 55519 (10th Cir. 2001) (challenge to prison disciplinary proceeding which resulted in the loss of good conduct time is cognizable in habeas as it will inevitably affect the duration of petitioner's confinement, and hence the fact or execution of petitioner's criminal sentence). Accordingly, to satisfy the exhaustion requirement for his habeas claim, Ibarra-Villalva was required to have properly exhausted the only claim cognizable in this proceeding - his challenge to the DHO decision itself. An administrative challenge to that decision was required to have been filed directly with the regional office under 28 C.F.R. § 542.14(d)(2), something the record establishes Ibarra-Villalva did not do.

The Court must conclude that Ibarra-Villalva failed to exhaust his administrative remedies with respect to the claim asserted herein, and his

petition must therefore be denied as prematurely brought. Had the BOP chosen at any level to address his claims on the merits, the Court would have available an evidentiary record upon which to review them on the merits if it chose to ignore the obvious procedural default. But without such a record before it, the Court declines to do so.

Finally the Court notes that the allegations made by Ibarra-Villalva do not appear to present any substantial claim. Petitioner first alleges that the DHO Report incorrectly states that he was at FCI-Coleman Low during the incident, when in fact he was at FCI-Coleman I. This minor factual discrepancy appears to be at most a typographical error. Second, the UDC incident report states that Ibarra-Villalva admitted to the assault on another inmate at the time of the incident -- petitioner alleges he made no such admission. However, the UDC form indicates that Ibarra-Villalva denied any responsibility for the assault prior to the DHO hearing. Accordingly, because Ibarra-Villalva had not made an unequivocal admission of the offense conduct, the DHO was required to and clearly made a finding of guilt based on the evidence presented. In sum, the presence of conflicting statements in the record by Ibarra-Villalva as to his guilt of the charged conduct does not, of itself, provide any basis to conclude that the DHO's finding was not supported by "some evidence," all that is required to satisfy the substantive requirements

of due process.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985).

Ibarra-Villalva also alleges that written statements made by some of the reporting officers were not part of the packet presented to the UDC, but were only added later to the packet provided to the DHO.  However, the UDC merely reviews the alleged conduct and recommends a charge to match the offense conduct and appropriate sanctions if the inmate is found guilty.  The DHO hearing is the forum where all of the evidence in support of the charge is presented and the adjudication of guilt and sanctions are imposed.  Variations in the evidence presented in the two proceedings is not unexpected or noteworthy.  Ibarra-Villalva does not allege that he was not present at the DHO hearing or unable to challenge the evidence presented at that hearing.  In sum, this allegation does not state or suggest that any of the protections required by *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974) were not adhered to.

Finally, Ibarra-Villalva alleges that the DHO refused to delay the 1:30 hearing notwithstanding the fact that his designated staff representative was not present.  However, the staff representative appeared approximately thirty minutes later and participated in the hearing.  Ibarra-Villalva does not indicate any prejudice from this delay.  In addition, due process entitled Ibarra-Villalva to advanced notice of the charges and hearing, the opportunity to present evidence in his defense, and an explanation of the evidence relied upon to

11

support a decision against him. *Lee v. Young*, 43 Fed.Appx. 788, 789 (6th Cir. 2002). Because this allegation does not assert that one of these required protections was denied, it provides no basis for relief.

### III. CONCLUSION

The Court being sufficiently advised, it is **ORDERED** as follows:

1. Ibarra-Villalva's petition for a writ of habeas corpus [R. 2] is **DENIED.**

2. The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

Dated this 21st day of July, 2008.

Signed By:
*Karen K. Caldwell*
United States District Judge

12